May it please the court. We appeal from the District of Maryland's 12B6 dismissal of plaintiff's complaint. Well, I'll start off by saying 31 different federal district courts have evaluated the sufficiency of substantively identical allegations and these 31 different federal district courts have ruled on substantively similar motions to dismiss filed by the FLE's defendant DIRECTV and its co-defendants. Of these 31 federal district court orders, only one has concluded that plaintiff's allegations do not plausibly allege an employment relationship under the FLSA. And I had some remarks prepared. I wanted to focus my presentation on the employment status and the economic realities test. But the questions by your honors in this in the first case this morning, I heard one question that I would really like to just jump in on and that was your question Judge Wynn about... We know the posture of this case is somewhat different from the other cases of 12B6. Right, we don't have a fully developed factual record. Your review is de novo based on our allegations which are entitled to a presumption of truth and in this case the district court misapplied federal pleading standards in not granting that presumption of truth to our allegations. In addition, the district court misapplied the FLSA's test for employment. In our case, unlike the Salinas case, there is no acknowledged employer of our plaintiffs. They are treated as 1099 independent contractors. DIRECTV sits atop this network. It has developed this fissured employment by which it controls a workforce of installation technicians, some of whom it has a direct relationship with W-2 installation techs, but most of whom are treated as 1099s. Those are the It assigns all the technicians an identification number. It sends them work orders assigned to that identification number that tells them where to go. DIRECTV trains these technicians. It tells them what to do, how to do it. You're saying that DIRECTV is going to be that these plaintiffs have no employer whatsoever. The plaintiffs are themselves independent contractors. I thought they were employed by a subcontractor that was underneath DIRECTV. There are several layers of intermediaries in this overall scheme, but the relationship that we allege here is that DIRECTV is actually an employer. I do understand that, but I'm just trying to figure out what is the alternative. If DIRECTV is not, I thought that they were still employed by a subcontractor, an intermediary contractor. I believe that we would have the same argument against such a subcontractor, but we don't have a W-2 relationship where nobody ensured that the obligations of the FLSA were followed with these technicians. So they were not paid over time. What does the Landers case do to your pleading? Landers? So as far as federal pleading standards go, different courts have set different requirements for the level of particularity with which a plaintiff has to plead allegations under the FLSA. The Landers case is probably the highest bar that's in the Ninth Circuit. I don't know that the district court's order here, which we request this court reverse, is necessarily applying the strict Landers pleading requirements. The error below really is in not presuming the truth of the allegations and failing to apply the economic realities test in a way that actually gets to the economic reality of the relationship as we structure an analysis in order to actually determine whether a worker is an employee under the FLSA or an independent contractor, and when there are potential for multiple simultaneous employers, how do you structure the analysis for determining joint employment versus independent contractor employee status? I think that the Schultz case... Well, I want to make sure, at least in the way you just phrased that, that it seems to me the first thing you've got to determine whether there's a joint employment relationship. So I believe... That informs the further analysis of the employee status of the independent contractor. Yes, Your Honor, and I believe that's how the court in Schultz approached the analysis. The court first looked to whether the facts, and here it's facts as alleged, show that you meet the regulatory definition of joint employment, which is 791.2B, I think our allegations fit number three, where there's shared control over employees, over the workers. The entities are not completely disassociated. In fact, here they're very closely associated. Which two entities? The co-defendants in this case are Direct TV, and it's kind of the first level of intermediary, which is DirectSAT, who is, as we allege, Direct TV is their sole client. Primarily, all their income comes from... I'm back with Judge Wynn's question about how to structure this. So you're saying there are three options. It could be that the plaintiffs are independent contractors. They have no employees. It could be that they are employed by DirectSAT. It could be that they are employed by Direct TV, or it could be that they are employed by both DirectSAT and Direct TV. Those are the four options, and the first question we should ask is, are they employed by both? Why wouldn't we first say, are they independent contractors? Because if they are, then we're done. Right. So actually, to be clear, in our particular case, five of the seven plaintiffs are only alleging an employment relationship with Direct TV. They had no relationship with DirectSAT. As to those five plaintiffs, why are we talking about joint employment at all? They either have an employee or they have no employee. Right. The only inquiry is, were they employees under the FLSA, or were they independent contractors? Okay. So I guess I would urge the court to consider... Did the court address that question, whether they were independent contractors? The district court acknowledged kind of the silk factors, the independent contractor factors, but then it went right into resolving a question of joint employment and found that Direct TV couldn't be a joint employer, so it But so, okay. And I guess I would urge this court to, whether the approach is on similar facts, to just see if there is, if the 791.2 factors have been met, then yes, you have a joint employment relationship where multiple employers can be held accountable under the FLSA, and then you look to whether the employees you're actually talking about, the workers you're actually talking about, are actually employees, and then in that case, you apply the six silk factors. I guess I just don't understand the order of operations. Maybe this goes back to Judge. Once you've found there are joint employers, why are you still asking if someone's an employee? Like, who are they joint employers of, if not the plaintiff? Maybe a different and better approach, at least on facts like ours, would be just to ask the one question, which is, are these employees? Are these employees under the FLSA? And you look at, and I think the case law is very clear, I think Schultz is very clear, that the relationship you need to focus on is not the relationship between the two putative employers or multiple employers. The relationship that is that between the worker and the alleged employer. And here we would urge the court to look at the relationship alleged between the workers and Direct TV, and in case of two plaintiffs, we would urge the court to look at the relationship between the workers and Direct Sat. That was fairly confusing. Because if we don't approach these in a consistent way, and look at this, you have an independent contract of the two employers, and you first have to determine, is there this joint employment relationship? Schultz tells us that. You've got to do that first in this case. And if we do it in that way, and you look at Judge Mott's determination, he said, the plaintiffs did not sufficiently allege a joint employment relationship between Direct TV and the HSPs. And then secondly, he said, maybe it's time barred, we won't probably get into that very much. But then thirdly, he says that plaintiffs have failed to allege an actionable employment relationship under the FSLA. That's where we get into the whole business of the practice here to determine. That's how we get there. We've got to first determine, because we're not even talking direct relationship, we're just talking straight FSLA. We're not talking about whether it's a joint employment relationship, which is a whole different ballgame. That's what the judge determined first. Right, and I don't know that there's... Who signs the page? I mean, where does the money come from? Who's paying these plaintiffs? Plaintiffs allege, and we believe the facts will show, that ultimately the money comes from Direct TV. But where does it come from directly? The subcontractor, Direct TV has delegated out, through these contractual arrangements, the subcontractors cut checks to the plaintiffs. But the sub, but the plaintiff does not have an employment relationship with the person who's paying the money? Not a W-2 relationship. They have an independent contractor agreement. I'm still kind of puzzling through this issue of what comes first, but perhaps... Well, if you can establish first that from a 12-B-6, you sufficiently made allegations to establish a joint employment relationship, you then can continue the analysis. And the joint employment relationship is established by, through allegations that there's shared control, that the putative employers are not disassociated, that... Are really more focused on one putative employer's relationship with the employee, and evaluated the degree of control. Do they do hiring and firing? Do they have the authority to hire and fire? Do they have the authority to control and supervise the manner, method, means of work? Do they keep records? And plaintiffs have alleged... Oh, I see I'm out of time. Go ahead. Plaintiff's allegations touch on every one of these factors. I'm just so confused. I really apologize. I just have to be clear on this. As do the plaintiffs who are only alleging a relationship with DirecTV. How can there be a joint employment relationship? They are only pointing to one employer. I don't understand the premise. Joint employment, DirecTV, and who else? I thought it was their subcontractor, the intermediary. And they were saying, I have two. I actually have two employers. The subcontractor, the person who writes me the check, and DirecTV. But you're saying, no, no, not the person who writes the check. That's just, that's not an employment relationship. So how is this a joint employment question at all? Why, as to those five plaintiffs, isn't the only question? They are either independent contractors, or they are singular employees of DirecTV. I think, I think I understand your confusion. And joint employment may be a misnomer. Doesn't it only refer to two employers? How can it not be a misnomer for someone who only has one employer? Well, so these plaintiffs worked through, were engaged by subcontractors, and maybe multiple layers of subcontractors. And over time, these subcontractors folded up shop. They worked for other subcontractors. For their entire tenure, they worked for DirecTV. They were doing DirecTV's work. So how many employees are you alleging they had? We are alleging that DirecTV is their employer, for purposes of the FLSA. There may be, it may be that we could make the allegations against the subcontractor. I'm talking about only the plaintiffs who only have the claim with DirecTV, who are not bringing DirecTV. Our allegations here are only against DirecTV for those plaintiffs. Who is the other employer? How is DirecTV a joint employer, if your allegation is that they have one employer and one employer only? There is no other employer alleged here. And why don't we start by asking about joint employment? You are not alleging that there is joint employment. I agree. Okay. Right. I agree. Yes. You wouldn't start with joint employment, not for these plaintiffs, and not necessarily for the other two who have co-defendants, who are suing both companies in this case. I'll sit down. All right. Thank you. Yes. We'll hear from the appellate. Good afternoon, Your Honor. May it please the Court, my name is Colin Docherty. I'm here on behalf of the appellees in this matter, DirecTV and DirecTSAT. Your Honor, Judge Harris, I believe your questions cut to the heart of this matter, at where we are and the difference between this case and Selina's. We're at a 12B issue here on what was properly pled. And Your Honor is expressing frustration and confusion because, and I don't mean to read into what you're doing, but it certainly appeared that way to me, that you reading the complaint can't tell what's being alleged about whom and against whom. And that's exactly our point in our motion to dismiss. And I think that's exactly what Judge Motz held. Now, he addressed the, he touched the distinction as raised in Schultz of the independent contractor. And he identifies the six factors, the silk factors, and then the Burnett factors. But he doesn't apply them, right? He doesn't hold these, he doesn't say these people look like independent contractors to me. He just says there's not a joint employment relationship with DirecTV. So I don't understand what's going on. Correct. Because in the complaint. Is that your position that these people are all independent contractors? They have no employer whatsoever? No. Our position is that they are employees of an unnamed subco. Okay. Who, some of whom are named in passing in the complaint when the specific plaintiff's sections are addressed. That's what I thought. Some are not named. So you are not arguing that they are independent contractors? Nobody in this case is arguing that these plaintiffs are independent contractors? We are certainly not arguing that they have a 1099 relationship with either DirecTSAT or DirecTV. Well, it's my understanding that all of them have alleged to have worked for different HSP subcontractors over the time in question. Two of which work for DirecTSAT. Is that correct? Well, yes and no, your honor. So the first part of that is they all, we would agree, vaguely identify that they worked for some at times unnamed subcontractor who either had a contracting relationship with DirecTSAT or had a contracting relationship with DirecTV directly. However, and I think this is part of Judge Motz's point, those relationships are not spelled out and particularized at all in this complaint, let alone for each individual plaintiff. I asked the way I phrased the question, is that they have alleged to have worked for different HSP subcontractors over time. Did they make that allegation? Correct. So they have alleged to have worked for subcontractors under an HSP. The only HSP that is discussed in this case is DirecTSAT. But there are other, not to go outside the record, but there are other HSPs operating in the U.S. that have a contracting relationship with DirecTV. So for purposes of this case, we can assume that these plaintiffs have alleged that they are employees at least of a subcontractor and the question is whether DirecTV and or DirecTSAT is a joint employer? I think, your honor, yes, although it's very vague, I think. From what I just heard over there, I seem to have heard something about these, there's an allegation they work for DirecTV and there's no need to even talk about joint. I don't get it. I agree, your honor. Everybody else has said it. These people say they work for someone else and DirecTV has a different group and that's why Judge Moss made that determination to whether they're joint employment. Your honor, I agree completely with your assessment. Difficult to be. And with all due respect, it didn't sound too difficult to Judge Moss either and that's why we believe he ruled the way he ruled. This is a joint employment case after all. We believe so. Although, I think, again, your honor, part of your frustration is part of our frustration. You have 176 paragraphs that list a lot of... I think it arises because there's really, DirecTV really didn't employ these people as their employees. Correct. If they'd done so, we wouldn't be having this discussion. We'd be just discussing whether they complied with the by some other entity and DirecTV is working. And the allegation is they're over here working with this group but they come to work with DirecTV. They put on DirecTV jackets. They put on their shirts. They put on everything. They're going in and doing all the work and the allegation is that DirecTV is supervising everything they're doing. And based on that, they're saying there's a joint employment relationship and they should be covered by FSLA. Isn't that the allegation? Your honor, I would say that's the allegation although a little bit broader than you stated. The allegation in this complaint is technicians fit into how you describe. There's nowhere in this complaint that says Mr. Hall did this or had this experience. Mr. Lewis did this or had this experience. There's certainly, again, 176 paragraphs of this theoretical nationwide alleged fissured employment scheme. You know, DirecTV sits at the top of the pyramid. Multiple HSPs sit in the middle of the pyramid. They're named in a footnote although they're not before the court. Multiple, dozens if not hundreds of subcos sit at the next level of the pyramid, some of whom again are named in the paragraphs under the headings of the individual plaintiffs but they're not here before the court. What you have is this generalized law review article, for lack of a better term, with footnotes that reference DOL memos, but you have nothing that is particularized and specific about the employment experience of Marlon Hall. Well, I thought they had the allegations in there that DirecTV would tell them what kind of work is compensable but what is not. Also, as they picked up their assignments in the morning, if you didn't give them one, they obviously had no work to do. So you control the employee in that regard. Is that not alleged in the complaint? Well, again, Your Honor, what is alleged is DirecTV does this generally. DirecTV does not, is not alleged that DirecTV specifically assigned work to Mr. Hall. It's DirecTV that assigns work to technicians. But to your point, Judge Motz, you know, implying the four Burnett factors, conceded number two. He conceded control. He said, you know, there is at least at the pleading stage allegations of either indirect or direct control based on some of the paragraphs Your Honor is What he then focused on, which there are no direct allegations are, are the pay and the hiring and firing. There are no specific allegations of who, and Your Honor, question my colleague about this, on who actually paid the individual, Mr. Hall. But there are allegations, right, that it's, I think maybe Judge Floyd just asked you about this, that DirecTV effectively controls how much money people make because DirecTV is giving out the assignments, and if you don't get an assignment, and can't they deauthorize or decertify technicians so that they can't take work? Isn't there a lot of control, if not direct, indirect control? I get it, and I'm sorry, I didn't mean to cut you off. Judge Motz concedes control, and we would... Overpay. Overpay. Again, no, Your Honor, this is, the pay issue that plaintiffs point to in their response is these generalized, conclusory paragraphs that say, well, DirecTV can deauthorize a tech ID number. There's nothing, though, however, that says that any of these plaintiffs had their ID number deauthorized. That's a different question. Control the ability, you don't have to prove that the plaintiff was fired. It's enough if you can show or allege that DirecTV could fire the person. That's what control is. It's the ability to do something. You don't actually have to do it. And I think there is an allegation that, at least indirectly, DirecTV can affect pay rates. There is a broad allegation. I don't believe there's any allegations about pay rates. There's a broad allegation that says DirecTV paid through the HSP, and that pay ultimately filters down to the technicians. Again, technicians are defined generally here, not specific to the to the plaintiffs in this case. But that goes back to, I think, some of the questions your Honor was asking in the Salinas case. Wouldn't it ultimately, wouldn't the homeowner and the plumber, if the homeowner was dissatisfied with the work the plumber did and withheld the money? I don't make my plumber wear a Harris family uniform when he comes to my house. I mean, I think these people are, as Judge Wynn asked, these people are required to hold themselves out to customers as being with DirecTV. I mean, they're dressed up in the DirecTV uniform. They are told to tell people, I'm with DirecTV. That seems pretty relevant. Your Honor, and again, Judge Motz agreed with the control factor. You wouldn't expect, however, your plumber to walk in without a shirt on. So that, and that goes back to the earlier question about quality control. And I suspect when you call to order the plumber, you wouldn't say, please plumbing dispatcher, make sure he's wearing clothes. You have a certain expectations of quality control and performance of the service you've ordered. Let's focus more in terms of use as control. I understand there's an allegation that DirecTV required screening and background checks as well as these specialized certifications. That seems to go a little bit beyond control, but they can also authorize pay deductions if they don't perform their work in a certain way. That's a little bit more to control. That's kind of getting to actually how much money you're making in the process of it, would you not agree? Again, your Honor, I'd go back to those are generalized conclusory statements made about the network in general. They are never brought down to these technicians. And quite frankly, at the 12B6 stage, why not just notice pleading? Let's move forward with it, you know, in terms of it. And then maybe you get to ferret this out at the summary judgment stage when you develop the evidence somewhat. Your Honor, with all due respect, Iqbal and Twan, we have held it's not quite notice pleading anymore. You still have to have some facts. And understood. And quite frankly, your Honor, the reason you don't is because my clients have to pay to defend this. And you have to have some bar to get in. And my colleague pointed out to these 31 cases, I believe they filed the orders from yesterday, but I think there's an important distinction there. There were other cases that granted the dismissal here. There was the Anaya and Hebron case. There was the DeMarco case in New Jersey as to direct that. But these complaints were not all identical. For example, in Anaya and Hebron, plaintiffs, while the motion to dismiss was pending, that was ultimately granted, filed for conditional leave to amend their complaint. After the complaint was dismissed, they amended their complaint. And then ultimately that new amended complaint was upheld. Here, at a 12B situation, plaintiffs never exercised their right to amend the complaint. Never filed any type of motion to conditionally amend the complaint. They had previously amended the complaint. For some of these individuals, this is the fifth iteration of this complaint in the third court that was pending before Judge Mott's. And yet, they want to say, you got to bring it back. Including also in those 31 dismissals, not one of those cases made it through clean. Something was dismissed. Admittedly, not everything was dismissed like this case, but something was dismissed. And in this case, plaintiffs specifically are not appealing their allegations of minimum wage violations. They've withdrawn those on appeal. So that's our point. And we believe what Iqbal Antawamli and his progeny requires. You can't just use a cookie-cutter complaint that you filed in 31 other cases. You have to bring specific facts as to these individuals and allege, we would argue, at least the Bonnett factors to get over that hurdle. And Judge Mott's agreed and analyzed and cut through the 176 paragraphs and we believe appropriately could not identify specific allegations regarding authority to hire and fire and pay as to these specific individuals. And again, couldn't even find who specifically employed them. That's not even clear, as your Honor's questions to my colleague demonstrated. Well, he did maintain employment records because he had a clawback provision under your scheme that this is compensable, this is not. If something that was not compensable got into the record, you had the ability to claw it back. And to say that he had no control over rate and method of pay was a little disingenuous in that he did control how much money they were going to make. If you pulled their little ID or whatever it was back on a day, it didn't work that day. And that was your decision. So that's, and then you can see the second supervised control work schedule and employment conditions. And really with that ability to control what they do that day, he certainly had an inclusive authority to hire and fire. So why didn't they meet? Because your Honor, again, with all due respect, we disagree that the paragraphs to identify do amount to controlling the ability to pay, the ability to hire and fire. What we believe, what our position is, these paragraphs in this complaint are vague and have not been specifically addressed to these plaintiffs and their experience. You know, we're left with what we have in the complaint and I understand that. I would argue that ultimately what your Honor is talking about will not be proven out by some reason. That may well be true. We're not at that stage right now. We're not. But if all it takes are generalized, vague allegations, then every complaint will come through. Then this complaint filed in any court, it could mix and match the number of, you know, who the plaintiffs are and we just have to defend that case. There's not anything specific about this case. And plaintiffs acknowledge that. They say these 31 other cases are exactly the same. I have to admit I'm working from memory, but I thought the complaint went through basically here's the relationship between DirecTV and the technicians and then it says, and we worked as technicians during this period. So your, is your complaint really that there needs to be another sentencing and like sort of see info about how they treat technicians? No. I don't get it. If you say here's what they do to technicians and then you say I'm a technician, what's missing? Well, it says here's what they do to technicians generally across the country. We disagree with some of those allegations. I know you do. But those are the... But in terms of the specificity problem you're getting at, I guess I don't really understand. You think... But what they never say is I was hired and fired and I would argue that part of the reason they don't say it is because the actual, they have certain ethical obligations and obligations under Rule 11. They can't as a technician say, Mr. Hall was hired and fired by John Sellers, Executive Vice President of DirecTV. They're not alleging that that's the relationship between DirecTV and the technicians. I don't... But are you saying that once you have, once they have set out, and I think in some detail, not just conclusorially, DirecTV employees, its technicians, they say and here's why. Here are the particular factors that we and the plaintiffs were technicians during these relevant time periods, and they spell them out, that that's not specific enough? They need to say more about each technician's experience than that I was treated the way paragraphs one through 60 say people are treated? Yes, Your Honor. Okay. Can I ask you a question about the legal standard that the district court applied? You've referred to the bonnet factors. Those are the sort of control factors. Certainly. But even the Ninth Circuit, right, has moved away from an idea that those are the only relevant factors. I mean, isn't the central problem in the district court's legal analysis, or explain to me why this is not a problem, that he stopped with just control, whereas it seems pretty clear that there is a consensus view that showing control is sufficient to show an employment relationship, but that those common law control factors are not necessary? Well, no, Your Honor. What I would say is because we're at the 12B stage here, when Judge Miles identified the four sort of core bonnet factors are in, and I think Your Honor has identified it in the Salinas case, have permeated and expanded and then split and maybe added to... In important ways. We've added, if you look at Rutherford, if you look at the DOL factors, I mean, there's this whole separate set of questions that go to integration. Are they performing work that's integral? Are they wearing the uniforms of the company who's supplying the tools? All of those questions, district court didn't address that at all. He did not, but he did address, but in all of those various iterations of the test, whether it's the 9th Circuit, whether it's the DOL, hiring and firing, pay are all part of that as well. They're part of it, but they're not necessary. So even if you fail on all of these factors, the question's not over under most iterations of the standard. Well, under most iterations of the standard, there's no one factor that is exclusive, but when multiple factors fail, at some point the test fails, and that's what the court did. And in the District of Maryland, Chief Judge Chesnow has stated in the Roman case that the Burnett factor, and where's the quote? I'm sorry, may I continue? That the Burnett factors are in some way included in all of the analysis. They're included, but there's this whole other part of the analysis that wasn't done by the district court here. And so even, I mean, the district court said, I think you're right, I'm giving you one factor, not the other three. But then there's a whole bunch of other factors that were never looked at. And as you said, it's sort of a holistic inquiry. You don't have to need any particular one. So isn't this sort of half an analysis, what we're looking at? Well, I would say it is the complete analysis that was before the court at the time, since Burnett, at least in the District of Maryland, seems to be the controlling case. As your honors have pointed out, the Fourth Circuit has never specifically held thumbs up, thumbs down, Burnett is it, or Burnett plus, and affirmed that. Well, you've given us an opportunity to think about it. Thank you for your honor. Thank you, your honor. We'll hear briefly from both, if you choose. I just briefly want to respond to my colleague's suggestions that there's nothing particularized to plaintiffs in these complaints. Yes, the complaint contains general allegations that apply to each one of the plaintiffs. And the complaint also contains, in satisfaction of Landers, very specific allegations for each plaintiff about the number of hours they worked in a week, what they were paid, how much their chargebacks were, how much of the time they worked was not paid. Do you maintain that Judge Marks applied a heightened standard in his analysis of this as a 12B6? I don't think he applied a heightened standard. I think he misapplied a few fundamental errors in his order. One of them being that he stated that the ultimate test of employment is hiring and firing and setting compensation. That's just a misstatement of the law. That's not what the FLSA says, and that's not what any of the precedent interpreting the FLSA says. The ultimate test of employment looks to the economic realities of the relationship to determine if the employee is, in reality, economically dependent on the employer. And Judge Marks applied the factors that he applied in a way that did not elucidate the economic reality alleged in the complaint. I think the other problem with Judge Marks' order is that he concludes that the allegations show nothing more than a reasonable business model, and that's not what our allegations allege. Our allegations allege a model in which a putative company sets requisites for hiring, firing, whatever factors. Well, that can be perfectly reasonable, right? There doesn't have to be anything wrong with it. It's just that now they're on the hook for FLSA liability. That's exactly right. It may be reasonable, but they also have to ensure that their workers are paid in accord with the FLSA, which they did not. Your Honors, I would close just by saying, you know, I am heartened by the fact that 30 other district courts came to generally the same conclusion, and my colleague suggested that all these orders are different, and then something was lost in each and every one of them. You have the orders in front of you. You can look at them. I think the consistency is pretty incredible. Despite all of the factors that are out there, the point of them is to get to this question of the real economic relationship between the parties, and we would ask that you reverse the court's order. Thank you. Thank you.
judges: James A. Wynn Jr., Henry F. Floyd, Pamela A. Harris